Title represents the training, impartial, and cohesive issues in society and community.   All right, our second case for this morning is Marchetti against Chicago Title Insurance Company. Mr. Ali. Good morning, Madam Chief Judge, and may it please the court. I'm Tawfiq Ali, here for Catherine and Jonathan Marchetti. The actual monetary loss or damage suffered by an owner for complete failure of title is a fair market value of the property on the date of loss. This is a principle that this court understood in the Allison case. This is a principle understood by courts around the country. It's a principle that has been admitted numerous times by the insurer, including through the Under Section 8B of the policy, which the parties agree was triggered in this case? Well, they don't quite agree, actually, because the prelude to Section 8 is that there be an actual loss, and this property was underwater no matter what date you choose, a little more, a little less, but the primary point that Chicago Title is making is that until you have an actual loss, you don't dig any deeper into Section 8. Judge Wood, I think you're correct that that is their main argument, that the property was underwater, the Marchettis did not have any equity in the property, and therefore they say there's no actual loss. And the letter they sent, I'm looking at page 23 of their brief, but I think there are other places, is they say the measure of loss for a complete failure of title is the fair market value of the property or the policy limits, whichever is less, and then they say the key thing, however, if the actual interest held by the insured is for security only, the loss is limited to the debt, and they negotiated a settlement that wiped out a rather considerably higher mortgage than the value of the property, which involved the cash payment of $110,000 and the forgiveness of the other $220,000, which as I would imagine is at a minimum a tax benefit to the Marchettis. Judge Wood, the problem with that first letter, that starts saying the damage owed to an insured is the fair market value of the property on the date of loss, and then saying unless the interest is held for security only, the problem is that the fee simple owner does not hold the interest for security only. That phrase is something they cribbed from what applies to a lender's policy, not to an owner's policy. But their policy also incorporates those concepts. As I recall, they issued both kinds of policies, and looking at these facts as a whole, I don't think the Marchettis were out of scent by the time this was over. They were put back in the place they would have been in had this transaction never happened, which is what Chicago Title was promising to do for them. Judge Wood, I think what you're saying is that there's an argument to be made that the Marchettis did not have any out-of-pocket loss, that they did not, they were not reimbursed payments that they made. However, that is not the law. The law of actual loss and damage on an insurance policy for an owner is not whether there was out-of-pocket loss, it's not limited to the purchase price, it's not limited to consideration paid. Even with the language of this policy, maybe you could write a policy like that, which Chicago Title's duties on an initial showing of actual loss. Judge Wood, even under this policy, the term actual monetary loss or damage, this is a standard policy, this term has been interpreted by other courts, as well as in the Nielsen Treatise, where he's clear that actual monetary loss or damage refers to the fair market value of the property, it's not limited to out-of-pocket loss, he says that explicitly. It's not limited to what the insured paid for the property, it's not, it doesn't relate to other payments that the insured made. It is the actual- Are you making, or have you made the more modest claim that even an underwater property has an option value, and therefore the coverage is for the equity, including option value? I didn't see such an argument in your brief, I wondered if you had made it in the district court or otherwise preserved it. No Judge Easterbrook, we did not make the argument that it has at least option value, although it does. And that's- Well, I don't care whether it does, I just cared whether you made the argument. The market value of the property would include issues such as option value. No, it would not. So if the Marchettis had tried to sell this property on October 24th, 2008, at which point your appraisal says it was worth $202,000, it was encumbered by a mortgage of upwards of $330,000. I don't know if they'd paid any off of the principal yet, but they would have recovered exactly zero. There might have been a deficiency judgment against them when the time came to pay back the mortgage since they don't own the property anymore. So that's kind of another way of looking at why they really haven't lost anything. Why was the lender willing to settle for $110,000 when Chicago Title should have been prepared to pay up to $198,000? That's a good question, Judge Hamilton, and the record isn't clear on why that's the case. You own there was an appraisal at the time for the lender, right, saying $110,000? There was an appraisal done, a later date appraisal done, that showed that the property is worth $110,000 at a later date. The record does not actually include correspondence with the lender showing that the lender relied on that appraisal. Chicago Title was a party to the settlement with the real owner of the property, right? No, Your Honor. Chicago Title was not a party to the settlement. I thought I saw a signature. Maybe I missed it. We just have a portion of that document in our appendix, but at A38, I see Chicago Title Land Trust Company signature, David J., hard to read? Judge Hamilton, Chicago Title Land Trust Company was not the Chicago Title Insurance Company that's the insurer in this case. That's a land trust company that held the interest on behalf of the true owner of the property, Carlo Leckage. Chicago Title was not a party to that agreement. Thank you. And so, in that entire document, and again, we only have portions of it, is the term Marchetti's non-party claims a defined term? The Marchetti's non-party claims, as I understand it, would apply to any party that was not a party to that agreement. Is it a defined term in the agreement? I don't remember. It's capitalized. It's the kind of convention that would often. I guess, your position does require some gymnastics, but I'm not sure they're unmanageable. There was at least something of a windfall here for somebody, and one of my questions for the title insurer, in essence, will be why the insurance company gets out of this for so much less than it was willing to pay for a total failure of title. But in ordinary, I guess, more conventional transactions than this one, you don't need to show out-of-pocket loss, right? If somebody can simply come in and show the fair market value as of a certain date of loss, it's not necessary to show that the property changed hands at that lower price, is it? Judge Hamilton, if I understand correctly, the measure of loss to an owner is the fair market value of the property on the date of loss. And that need not be supported by a proof of out-of-pocket loss or a sale at that discounted price. Take the different case, not a total failure of title, but simply an extra burden on the ownership that makes the property less valuable. If the burden, the easement or whatever it is, knocks the property value down by 100,000, the insured doesn't have to sell the property and realize that loss in order to collect from the title insurance company, does he? That's correct, Judge Hamilton. An appraisal will perform that function just as in a condemnation proceeding or an eminent domain proceeding. And in fact, here everybody seems to agree that the out-of-pocket losses that were real are not compensable. Right? Yeah, there was rent paid. The construction materials bought and so on. That's correct. Chicago title took the position that out-of-pocket losses weren't compensable anyways. And that's not before us. You're not appealing that. No, Your Honor, because the fair market value of the property is the compensable loss to the Marchettis. Okay. Well, if you want to save a minute for rebuttal, this is probably the time for that. Sure. Thanks, Judge White. Thank you. I appreciate that. Mr. Roth. Good morning, Your Honors. James Roth on behalf of Chicago Title. The district court in granting summary judgment in favor of Chicago Title in this case got it right because Chicago Title did not breach its contract and it fulfilled all its obligations to the Marchettis under its title policy. As a result of Chicago Title's acceptance of the Marchetti's title claim, the Marchetti suffered no actual monetary loss as a result of the failure of the title. Now, Mr. Ali says you're blending together the lender aspects of whatever Chicago Title was doing and the owner aspects and that you should have paid this 198 to the Marchetti's who then may have had to turn it around and pay it to the bank, but that they were entitled to the full amount. Well, I think as we demonstrated in our brief and also with the testimony of our Chicago Title's expert, Nielsen, that in the instance where you have both the lender's policy and the policy provides that you would go to the lender's policy and pay that first. Which policy? The owner's policy says it sort of integrates the two? Correct. In fact, both policies say that. It would be the, I want to make sure I get it right, section 11, which is the liability non-cumulative, in which Mr. Nielsen had pointed out that you would pay off the lender first and that's a credit against the owner's policy. But in this case, where you had the loan and the lender's policy amount far exceeded the value of the property, that by paying off that lender's policy and the forgiveness of that debt, the owner had suffered no loss. Doesn't that seem to presume, though, that you have to use the same date of valuation for dealing with the lender as you do with the owner? Well, no, Your Honor, it doesn't imply that because there are two different dates of loss. But in this case, no matter what date of loss you use, you're in the same situation. And I think what's unique about the facts of this case that actually distinguish it factually from all the cases that were cited in the briefs. In this case, the Marchetti used other people's money. Every cent. Sure. It was a wild and woolly time in the real estate market, but your client wrote the policies, right? That's correct. Okay. So I guess I don't understand why Chicago Title didn't insist when you paid off the lender, the $110,000, that you also get a release from the Marchettis. Well, I'd have to say, Judge, that if that was the case, we probably wouldn't be standing here. Precisely. But, I mean, this is a mess that you all helped create. It's a pretty unusual situation. But you all were prepared to pay up to $198,000 for a complete failure of title, right? I think that might have been the – if the facts would be a little bit different. And the fair market value as of the date elected by the owners is what your policy says, right? And if that date of loss would have been used, the money would not have gone to the Marchettis. It would have paid off their debt. It went to the lender. That's the way this wound up getting handled. The lender was willing to walk away. The question is who benefits from the lender's generosity, your client or the Marchettis? And it's not clear to me why your client benefits here. Given the way the policy is written, given Nielsen's treatise, et cetera. Well, I think in the real world, the way this would work is, one – In the real world, why didn't this work this way? This is a real case. Right, but I think it did work this way. Chicago title – Except that you didn't get a release, right? That's correct. Okay. So tell me about my hypothetical world that is this case. Right. Well, in this case, if the – Chicago title would not have paid the Marchettis directly if there was a loan, a mortgage out there that we also insured. So if the Marchettis insisted at the time they entered into the settlement agreement of the state court case, the value of this property is $198,000. The payment, the lender would not – who is owed $300,000 would not say, well, you Marchettis can take $200,000. You give us $100,000 and we'll walk away. Of course that's – That would never happen. Counsel, of course that's correct. But we've got wild fluctuations in real estate values in the relevant times, and we've got policies and practices in the industry that provide for different valuation dates. And sometimes those work to the benefit of the insurer and sometimes to the benefit of the insured, right? Right. Both the major treatises make that point repeatedly in dealing with this time of loss issue. And in this case, it did not work in favor of the Marchettis because the market fluctuation was the market went down. But you can't say that their loss has to be measured as the date of the lender's loss, can you? Well, Mr. Nielsen pointed out that under these set of facts that would be the case. Well, he had his opinion that was specific to this case, despite what his treatise says more generally. Let me get at this a different way. Can you state the rule of law that you think applies here as to measuring the insured's loss for a total failure of title? Well, the general rule is it's the fair market value without the defect. And then the loss would be the fair market value without the defect, the difference. Which is the general rule. Zero in fair market value here as of when? Under the terms of the policy, it's either on the owner's date of loss. Which is October 2008. Correct. But it would also go on to say that if the property is completely underwater and their loan is paid off, they would have no loss. Suppose they're underwater in a loan to parents who are in a generous mood. Who gets the benefit of the parents' forgiveness of the loan? Surely that would not go to the title insurance company. I believe that's correct. Okay. So the trouble I'm having, Mr. Roth, is that because of Chicago Title's failure to make sure this all got wrapped up in one agreement, you seem to be asking, you asked the district court and you seem to be asking us, to adopt a unique sort of good-for-this-ride-only exception to the general rules that apply in this industry. And I'm just not sure it's worth doing that. Well, I don't think that's really what I'm asking, that we want a specific ruling. I think the facts of this case dictate it. Let me ask you a different question that may get indirectly back at where Judge Hamilton's going. Chicago Title Company resolved the Marchetti's problems with this title with two different mechanisms. One was a payment of $110,000 to the bank, which perhaps accepted that because they had too many foreclosures and whatever. I don't know why they accepted it, but I could imagine why they might accept the fair market value. And the other was forgiveness of the other $220,000, which is certainly a benefit. It's a situation where the detriment to Chicago Title was less than the benefit to the Marchetti's. No skin off Chicago Title's nose to have that $220,000 forgiven, but it was a big deal for the Marchetti's, since they didn't know the money anymore and the mortgage was gone. And I wasn't sure to what extent you have ever argued anything about the other $220,000 that got forgiven as a way of compensating, you know, through your negotiations, the Marchetti's for not just the fair market value as of October 24th, 2008, but indeed even more. I think that was argued in both the district court and in our brief somewhat indirectly, and it was indirect in this way. That when Chicago Title accepted the claim, retained outside counsel to represent the Marchetti's, paid for the outside counsel, their lawyers defended them in the lawsuit, and in the end, after two years of litigation, negotiated the settlement. Their lawyers are the ones who ordered the appraisal, chose the date of loss for the appraisal, and that's what it was based on. I understand that. I'm just saying if Chicago Title's duty was to give value to the Marchetti's, I don't know why it makes any difference if the value is loan forgiveness or if the value is an actual payment to the lender. Why do the Marchetti's care? Well, I think that to me is the question. Why do they? Because they are made whole. They walked away from this deal in the same position they were when they entered into it, except for maybe their hopes and aspirations, but any monetary loss that they had suffered was they were made whole. They received the full compensation for it through the forgiveness of the sin, through the forgiveness of their debt, and the lawyers negotiated that settlement in the state court amongst the plaintiff in the state courts and amongst the lender for the Marchetti's. I understand that to be your acquiescence argument, right? Well, I think the acquiescence, that ties into the acquiescence argument. They went along with each step of the way. Right. They received the benefit. But they also expressly reserved claims against their title company from that settlement, correct? I wouldn't say that's correct. Point me to language that amounts to acquiescence then. Well, I think there's no language in that agreement, I would say, that specifically is acquiescence, but it was the facts that led up to that agreement. That's an argument that you guys shouldn't have written a check to the lender without insisting that it be a package deal, right? Well, I think what I was saying earlier is if that would have been done, that would have been probably the optimal way to do it. It wasn't done, but I think the fact that all the facts that led up to that settlement agreement show that the Marchettis were totally on board with it. In fact, he testified in his deposition that when he entered into that settlement agreement, he knew that his purchase money mortgage was going to be forgiven and the construction loan was going to be forgiven, and that at that point, that would have made them whole. So they were on board with this whole thing. This is an afterthought. In fact, their initial claim was not based on date of loss. It was based on what they later determined as out-of-pocket costs that were consequential damages that were not covered. It's an afterthought. After they had the burden of this $330,000 mortgage lifted off their backs through the effort of their lawyers that were retained on their behalf by Chicago Title, then they came up with the theory after their out-of-pocket requests were denied. Is there any case law that you can direct us to? I know that it's fairly sparse around the country based on your briefs, but any case law you can direct us to that treats such relief from mortgage debt as, in essence, an insurable benefit? I had thought all of this was, in essence, title companies trying to make sure that the mortgage companies get paid first without courts having recognized this as a further benefit. Well, I have not found a case that I think specifically addresses that issue, and I think that's why we're looking at the language of the actual monetary loss as being the controlling language under the facts of this case. Right, and I guess the concern I have is you want actual monetary loss to be viewed kind of across time, across all the years of transaction and ultimate litigation and settlement. And plaintiffs are saying, no, we get fair market value as of the date of our loss, and at that point, it's our problem to have reached a resolution with the lender, and you did us a favor by having done that, but we get the benefit of the difference. And by making that argument, I think that flies in the face of the restriction, which as court has previously in the Allison case recognized, that first you have to have that actual monetary loss, and they wouldn't have had that. You would agree that actual monetary loss does not have to be out of pocket, wouldn't you? I would agree that's true. It would not necessarily have to be out of pocket. You don't have to have sold the property at a loss to realize that loss. That's correct. All right. Thank you very much, Mr. Roth. Okay. Thank you. Anything further, Mr. Alley? You've got a few minutes. Yes, sir. Judge Hamilton, regarding your question about relief from a mortgage and whether that's a benefit that the insurer can take advantage of, there is a case called Smurlock out of New York by the highest court of that state, and it's a case that Nielsen's treatise cites for the very proposition that the insurer cannot take as a set-off the benefit of removal of a mortgage. Why is that a sensible policy? I'm thinking of the next case where the title insurance company is faced with this kind of situation. Haven't you eliminated its incentive to negotiate a debt reduction with the lender? Because they're not going to get any benefit from it anyway. They're still going to have to pay up to the policy limits. They've essentially found a way to pay the Marchettis with debt forgiveness instead of money out of pocket, which leaves the Marchettis in much the same place, but certainly more advantageous for the title company. But in the next case, what title company would bother to negotiate debt forgiveness for any amount below the policy limits? Part of the premise of your question, Judge Wood, is that the insurer needs to be the one negotiating the release, and that was not necessarily the case here. They're paying the lawyer, but if it's not harmful to the insured party, the insured party either gets a $198,000 payment to the bank with debt forgiveness of the rest or a $110,000 payment to the bank with this $88,000 whatever difference. But I'm just concerned about the incentive effects of your position. The incentive of a negotiation, one way to consider that, one way that could be handled is by agreement between the insurer and the insured. The Marchettis could have actually made an agreement with the insurer saying, okay, Mr. Insurer, please go ahead and pay for our attorney to negotiate this deal for us and we'll waive any claim to the deficiency. That could have happened. That did not happen in this case. And people like the Marchettis might not want to make that deal. So what happens when they don't? The insurer has no incentive to just fine pay, you know, pay the extra money. The insurer has an incentive to... So it doesn't go to the Marchettis. That's what I'm getting at, you know, goes to the bank instead of Marchettis, just as a practical negotiating reality. Aside, I see what you're saying, Judge Wood, and I see some merit to that. There's another issue of incentive that one needs to understand, though. If the insurer is not having to pay the full fair market value of the property, it also does not have the incentive, the full incentive, to do a thorough title search to avoid the problem in the first place. Title insurance is special in respect to a lot of other types of insurance because the title insurer is in a better position to recognize the risk than the insurer himself. So if the title insurer doesn't have to pay the full loss created by its failure to discover the defect, it doesn't have the same incentive to discover the defect in the first place. Yeah, but that's, I've got to say, that seems like a bit of a stretch because your theory of relief here depends basically on some pretty wild fluctuations in market values and distortions of the mortgage market that convinced, this was somebody, the original lender went through FDIC reorganization, and then this was somebody who'd kind of bought it up at a discount. That's right. The original lender was in some trouble. Yeah, so, I mean, the incentives you're talking about would be the product of this very, very odd concatenation of events here. This is an unusual case in that respect, sure. You don't have, historically you've not had these wild market fluctuations, especially going a downward turn in the market after the discovery of a loss. It just so happens that it happened in this case. More generally, Your Honors, I see my time is up. All right. Well, thank you so much. Thank you also. We will take the case under advisement.